WILLIAMS, J.
I iThe defendant, Cortez Pratt, was charged by bill of information with armed robbery, in violation of LSA-R.S. 14:64. Following a jury trial, he was found guilty as charged. Thereafter, he was adjudicated a third-felony offender and was sen-fenced to serve 70 years in prison at hard labor. He was also ordered to pay court costs or serve 30 days in parish jail in lieu of payment. For the following reasons, we affirm the defendant’s conviction. We amend the defendant’s sentence to delete the portion that imposes default jail time in lieu of court costs, and as amended, we affirm.
FACTS
On October 8, 2011, Stephanie Austin and Veronica Smith were employed at the Dollar Tree store, on Pines Road in Shreveport, Louisiana. Ms. Austin was the assistant manager; Ms. Smith was a cashier. The two women closed the store at 10:00 p.m. and proceeded to count the money in the cash registers.
During the trial, Ms. Austin testified as follows: she counted $2,482.19, in cash, and had placed it in a bag; she planned to drive to the bank to deposit the.money; she, along with Ms. Smith, locked the store and walked across the parking lot to their vehicles; a man approached them and asked for “the bread;” she attempted to hand the man a pizza;[1] the man refused the pizza, stating, “Give me the money, bitch;” she told the man that she had already taken the money to the bank; at that point, the man lifted his shirt and revealed a gun tucked into his pants; she removed the bag containing the money from her purse and threw it onto the hood of her car; lathe man took the money and fled on foot; she began chasing the man but stopped when Ms. Smith urged her to do so.
Ms. Smith testified as follows: she was talking to Ms. Austin as they walked to their vehicles; she looked up when Ms. Austin called her name; she saw a man standing next to Ms. Austin; she saw that *818 the man was armed with a gun;- she heard the man tell Ms. Austin that “he knew she had it;” Ms, Austin threw the bag containing the money onto her car; the man took the bag and ran away; Ms.-Austin began to chase the man; she told Ms. Austin to stop chasing the man; she retened to the store with Ms. Austin and called the police.
Officers from the Shreveport Police Department responded to the scene of the robbery. Detective John Jackson testified that, he first spoke to Ms. Smith,-who described the -robber as a black male “bald, about six [feet] plus and two hundred plus- pounds ... wearing dark khaki-colored pants.”. Ms. Austin provided a similar description, stating that the robber was a-black .male “six [feet] plus, two hundred thirty pounds,' real dark- skin, wearing a green shirt and greenish khaki pants,” Ms. Austin explained that lighting in the parking lot was provided by overhead lights and that her vehicle was parked “pretty close to [one of the] light[s].” She also stated that she was standing approximately three to four feet from the armed robber and the lights enabled her to see him clearly. Ms. Smith testified that Ms, Austin. and she were “right under a light” and that she was able to get “a good look” at the robber.
The investigation of the armed robbery led Detective Jackson to a [.¡nearby Circle K convenience store, where he reviewed the surveillance video from the night of the robbery. The store’s exterior motion-activated cameras captured video footage of'a man running past the store near the time of the robbery. Detective Jackson then viewed other video surveillance footage from the store, which showed the earlier arrival of the man seen running in the video. The footage revealed that the man was a passenger in a SUV and the passenger matched the description of the armed robber. The video also showed the following events: the driver and the passenger of the SUV entered the Circle K store; the passenger exited the store and walked around the side of the building at 10:16 p.m.; the driver waited in the parking lot until 10:34 p.m.; the passenger did not return, so the. driver drovp away.
Detective Jackson drove. Ms. Smith to the Circle K and showed her the.surveillance footage. She identified the man seen running in the video and riding as the passenger in the SUV as the armed robber. Ms. Austin was shown the video footage separately. She also' identified the same man as the robber.[2]
Detective Jackson obtained a photograph of the man from the video footage and distributed it to local media and Crime Stoppers. An anonymous caller informed police that the bald'man depicted in the video was the defendant.[3] Detective Jackson obtained a photograph of the defendant and created a six-person photographic lineup. He showed the | ¿lineup to Ms. Austin and Ms. Smith, separately, and both women identified the defendant as the armed robber.
On October 19, 2011, Shreveport police officers Brad Sotak and Ryan Holland drove to a location where the defendant was residing. At the sight of the officers, the defendant fled on foot, but the officers apprehended him and placed him under arrest. At trial, Ms. Austin and Ms. Smith again identified the defendant as the armed man who committed the armed robbery. '
The defense did not offer any witnesses at trial, On December 5, 2012, by a vote of 10-2, the jury found the defendant *819 guilty -,as charged. The defendant filed motions for new trial and post-verdict judgment of acquittal,. alleging that the evidence was insufficient ,to support the conviction. On March 4, 2013, the- trial court denied both motions. ■ ;
..On May 29, 2013, the .state filed a habitual offender bill of information. The state alleged that the defendant was a fifth-felony offender based on four -previous convictions for the following offenses:
Simple burglary in Caddo Parish on June 22,2000;
Middle grade simple criminal damage to property in Caddo Parish on June 7, 2002;
Purse snatching in Caddo Parish -on May 17; 2005;
Attempted armed robbery in Caddo Parish on May 17,2005.
Subsequently, the state filed an amended habitual offender bill, alleging that the defendant was a third-felony habitual offender based on the middle grade simple criminal damage to property and attempted armed robbery | ^convictions.
The trial court conducted the habitual offender hearing on September 24, 2014. A fingerprint expert testified that the defendant’s fingerprints matched those taken in conjunction with the defendant’s previous convictions. The court adjudicated the defendant a third-felony offender and sentenced him to serve 70 years’ .imprisonment at hard labor, Additionally, the court sentenced the defendant to 30 days in parish jail “in lieu of’ court costs.
Subsequently, the defendant'filed a motion to reconsider sentence. He argued that the sentence was excessive, the court failed to take into consideration the “evidence or lack of evidence adduced at trial?’ and a reduction in the sentence would-not deprecate the seriousness of the.offense. The trial court denied that motion on October 14,2014.
The defendant now appeals.
DISCUSSION
The defendant contends the trial court erred in denying his motion for post-verdict judgment of acquittal and/or motion for new trial. He argues that the evidence was insufficient to support a conviction for armed robbery. According to the defendant, Ms. Austin and Ms. Smith were not credible witnesses,.and the state failed to prove that he was the person who committed the crime.
When issues are raised on appeal both as to' the sufficiency óf the evidence and as to one or more' trial' errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing Insufficiency first is.that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing, the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
In State v. Marshall, 2004-3139 (La.11/29/06), 943 So.2d 362, 367, cert. denied, 552 U.S. 905, 128 S.Ct. 239, 169 L.Ed.2d 179 (2007), the Louisiana Supreme Court stated:
[A]n appellate court [may] impinge on the actual fact finder’s discretion ‘only to the extent necessary to. guarantee the fundamental, protection of due process of law.’ . Given this narrow compass, the *820 Jackson standard neither permits a reviewing court to second guess the rational credibility determinations of the fact finder at trial, nor requires a reviewing court to consider the rationality of the thought processes employed by a particular fact finder in reaching a verdict.
[[Image here]]
Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’s testimony, if believed by the fact finder, is sufficient to support a factual conclusion. Credibility determinations are within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence.
(Footnote and internal citations omitted).
Further, when the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Hughes, 2005-0992 (La.11/29/06), 943 So.2d 1047, 1051. Positive identification by only one witness is sufficient to support a conviction. Id.
In the instant case, Ms. Austin and Ms. Smith explained the lighting conditions at the scene, their opportunity to see the armed robber and the degree of attention that they paid to the perpetrator’s appearance. Both women independently viewed the store’s video surveillance footage and photographic lineups, and both identified the defendant as the armed robber. Additionally, Ms. Austin and Ms. Smith positively identified the defendant as the armed robber at trial. Further, the jury had the opportunity to view the video surveillance footage from the convenience store and the photographs obtained therefrom. After a thorough review of the record in this case, we find that the state negated any reasonable probability of mis-identification and the evidence was sufficient to prove that the defendant was guilty, beyond a reasonable doubt, of the offense of armed robbery. This assignment lacks merit.
The defendant also contends the trial court failed to impose an original sentence for the underlying conviction of armed robbery. Therefore, he argues, the court eired in imposing an enhanced habitual offender sentence under LSA-R.S. 15:529.1 and the sentence must be vacated.
LSA-R.S. 15:529.1(D)(3) provides:
When the judge finds that [the defendant] has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section, and shall vacate Isthe previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated. The court shall provide written reasons for its determination. Either party may seek review of an adverse ruling.
(Emphasis added).
We note that the trial court herein did not impose an original sentence. However, LSA-R.S. 15:529.1(D)(3) does not require the sentencing court to do so. The express language of the statute merely requires the court to “vacate the previous sentence if already imposed,” prior to imposing the enhanced sentence. This assignment lacks merit.
Further, the defendant argues that he was denied his right to an appellate review based on a complete record. He states that this Court must remand this matter to the trial court with an order to supplement the record.
*821 After the conclusion of the evidence, the original transcript contained the following notation:
Reporter’s Note:- By order of the Judges of the First Judicial District Court, the closing arguments of counsel and the Court’s charge to the jury have been deleted from the trial transcript.[4]
(Whereupon the proceedings were concluded).
At the defendant’s request, by order dated August 4, 2015, this Court ordered the First Judicial District clerk of court to “supplement the appellate record in this matter with duplicate certified copies of the omitted portions of the transcript of the December 3-5, 2012, trial, excluding voir dire[.]” jaThe clerk complied with the order and the record was supplemented on August 12, 2015.[5]
This assignment of error is moot.
In a pro se assignment of error, the defendant contends the trial court’s and this Court’s failure to include the jury’s verdict in the record constitutes a violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution. He argues that the record does not show that “the verdict of the [j]ury was delivered to the Judge in open court as required” by LSA-C.Cr.P. art. 810. He further argues that the record does not show that the trial judge directed the clerk to receive the verdict, read it and record it. Additionally, according to the defendant, the judge did not ask members of the jury whether the verdict was the one reached by them. '
LSA-C.Cr.P. art. 810 provides:
When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury.
LSA-C'.Cr.P. art. 811 provides:
If the verdict is correct in form and responsive to the indictment, the court shall order the clerk to receive the verdict, to read it to the jury, and to ask: “Is that your verdict?” If the jury answer ‘Yes,” the court shall order the clerk to record the verdict and shall discharge the jury.
A review of the supplement to the record reveals, that the jury’s |10verdict was delivered to the judge in open court as required by LSA-C.Cr.P. art. 810, and the court ordered the clerk to receive the verdict and read it to the jury, as mandated by LSA-C.Cr.P. art. 811. The colloquy was as follows:
THE COURT: (JURY FOREMAN], I • understand the jury has reached a verdict; is that correct?
FOREMAN: Yes.
THE COURT: All right. Would you pass the verdict form to the bailiff, please.
(Whereupon the jury form was published to the Court)
THE COURT: All right. Madam Clerk, would you please read the verdict.
(Whereupon the verdict form was published-to the deputy clerk of court).
*822 THE DEPUTY CLERK: Ladies and gentlemen, you will listen to your verdict: We, the jury, find the defendant, Cortez Pratt, guilty of Armed Robbery. December 5, 2012, signed [the foreman of the jury]. • Ladies and gentlemen, is that your verdict?
Thereafter, at the defendant’s request, the jury was polled. Ten of the twelve jurors voted for a verdict of guilty. Consequently, we find that the trial court did not err in accepting the verdict of “guilty.” This assignment lacks merit.
ERROR PATENT
We have reviewed this record for errors patent Our review reveals that the trial court imposed the' defendant’s sentence at hard labor but did | nnot -include the disability ^against parole, probation or suspension of sentence. ■ Pursuant to LSA-R.S. 14:64(B), any sentence for armed robbery must be imposed without the benefit of parole, probation or suspension of sentence.' Although the defendant was sentenced as an habitual offender, a sentence enhanced under the habitual offender statute is computed by referring to the underlying offense. State v. Richard, 550 So.2d 300 (La.App. 2d Cir.1989); see also, e.g., State v. Carroll, 41,001 (La.App.2d Cir.4/12/06), 926 So.2d 827, 829, writ denied, 2006-1470 (La.12/15/06), 944 So.2d 1283. This omission is automatically corrected by operation of LSA-R.S. 15:301.1(A).
Additionally, the trial court sentenced the defendant to serve a concurrent term of 30 days in the parish jail “in lieu of court costs.” An indigent defendant cannot be subjected to default time in lieu of the payment of a fine, costs or restitution. State v. Price, 49,011 (La.App.2d Cir.4/9/14), 136 So.3d 991, writ denied, 2014-0928 (La.11/21/14), 160 So.3d 970; State v. Lewis, 48,373 (La.App.2d Cir.9/25/13), 125 So.3d 482. A. defendant’s claim of indigence in such a situation may be discerned from the record. State v. Price, supra; State v. Arkansas, 47,317 (La.App.2d Cir.8/8/12), 104 So.3d 459, writ denied, 2012-1996 (La.3/15/13), 109 So.3d 374. The defendant’s indigent status has been shown by his representation at trial by the Indigent Defender’s office and his current representation on appeal by the Louisiana Appellate Project. Thus, the imposition of default time by the trial court Was in error. Accordingly, we hereby amend the defendant’s sentence to delete the imposition of default jail time for failure Lato pay court costs.
CONCLUSION
For the above reasons, the defendant’s conviction is affirmed. We amend the defendant’s sentence to delete the portion that imposes default jail time. As amended, we affirm.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED.

. Ms. Smith had purchased the pizza from a nearby restaurant earlier that night.

. The surveillance video was played for the jury during the defendant’s trial.

. The caller also identified the SUV driver who, had accompanied the defendant.

. -A similar notation appears at the beginning of the transcript stating that “Reporter’s Note: By order of the Judges of the First Judicial District Court, the opening statements of counsel have been deleted from the trial transcript.”

. Thereafter, this -Court afforded the parties additional time to file supplemental briefs.